# JANUARY TERM, 1926.[*]

1. VENDOR AND PURCHASER—LAND CONTRACTS—ORAL NOTICE OF EXTENSION OF TIME SUFFICIENT.

Where the time for completing an optional contract for the purchase of land was extended by the owners, oral notice by the broker to the purchaser of said extension was sufficient.[1]

2. SAME—PURCHASER NOT CONCERNED AS TO ACCOUNTING BETWEEN BROKER AND VENDOR.

Where the purchaser of land on an optional contract was given a further extension of time on his payment to the broker of a certain sum of money, he may not complain, in an action against the broker for the money paid, on his failure to go through with the deal, that said money was not all paid over to the owners; that being a question between them and the broker.[2]

3. CONTRACTS—CONSTRUCTION—SEVERAL WRITINGS TO BE CONSTRUED TOGETHER.

Where there were several writings all relating to the same conditional option to purchase land, they are to be construed together.[3]

Error to Wayne; Perkins (Willis B.), J., presiding. Submitted April 17, 1925. (Docket No. 130.) Decided March 20, 1926.

Assumpsit by Isidore Burstein against Albert E. Alldis, doing business as Alldis & Company, for money paid on an optional land contract. Judgment for defendant. Plaintiff brings error. Affirmed.

---

[1]Vendor and Purchaser, 39 Cyc. p. 1243; [2]Id., 39 Cyc. p. 1243; [3]Contracts, 13 C. J. § 487; Vendor and Purchaser, 39 Cyc. p. 1296.
[*]Continued from Vol. 233.

*Joseph B. Beckenstein,* for appellant.

*S. Homer Ferguson,* for appellee.

STEERE, J.     Albert E. Alldis was a real estate broker in the city of Detroit, doing business under the assumed name of Alldis & Co., with whom the owners had listed for sale lots 13 and 14 in the Cass Farm subdivision on Ledyard street in the city of Detroit. On April 13, 1920, plaintiff tentatively bought those lots from or through him, agreeing to pay therefor $140,000, $20,000 within 30 days, $5,000 in 6 months, $5,000 in a year and the balance in two years with interest at 6 per cent. per annum on deferred payments. Plaintiff made a deposit of $1,000 and received from defendant an agreement receipt in the nature of an option providing that the deal should be closed within 30 days after abstracts showing a good title had been furnished and stating the terms of the purchase. This was signed by defendant "as agents," and by plaintiff. The $1,000 then paid was to be applied as part of the first cash payment if the deal was consummated, otherwise to be forfeited or returned according to whichever party defaulted in performance. The names of the owners were not stated in that instrument but it specified, amongst other things, that "This sale is made by us as agents for the owners and subject to the owners' approval." Time was "made the essence of this agreement."

Lot 13, known as 31 Ledyard street, was owned by Rose Von Dolcke, and lot 14, known as 37 Ledyard street, was owned by William F. Voigt and his wife, Carrie Voigt.

Within a few days after the first memorandum was signed defendant delivered to plaintiff separate memorandums of agreement for the sale of each lot of similar import as the first, also dated April 13, 1920, and signed "Alldis & Company, agents, by John Hudson,

salesman A. E. Smith," to which the respective owners had subscribed "We agree to all the conditions herein contained."

They provided that all payments should "be made at the office of Alldis & Company until this agreement is fulfilled" and, as before, time was made of the essence of the agreement. The owners were to pay three per cent. commission on the selling price.

By these agreements the total purchase price of $140,000 was divided between the two lots as follows: the price of lot 13 was to be $71,000, with $10,000 to be paid within 30 days after abstract was furnished, $2,500 within six months, $2,500 within a year and the balance within two years. The price for lot 14 was $69,000, to be paid $10,000 within 30 days after abstracts were furnished, $2,500 within six months, $2,500 within a year and the balance within two years. The unpaid balances on each were to draw interest at six per cent. per annum.

Abstracts of title to the property brought down to date were soon thereafter furnished plaintiff and found by him satisfactory. He states of their first interview thereafter when he went down to defendant's office that—

"It was a few days after expiration of the 30 days from the first agreement, after the abstract was brought down to date, I was supposed to close the deal within 30 days before I came up there, and I told them that I ain't in no position to settle the case because the funds which I had I could not collect it, and it is the worse for me to lose the $1,000 or to have extension of time."

Admitting his inability to pay the $19,000 more at the expiration of the 30 days he negotiated with defendant for an extension of time, resulting in the latter agreeing to see the owners and if possible obtain an extension, on plaintiff putting up a further deposit of $2,000. On July 22d he deposited with defend-

ant a check for that amount and signed the following paper which was drawn up by defendant and signed as shown:

"Detroit, Mich., July 22, 1920.

"To ALLDIS & COMPANY,
    "Detroit, Michigan.
    "*Gentlemen:*   Herewith   attached   our   check   for $2,000 as a further deposit on the purchase of 31-37 Ledyard St., Detroit, Michigan; this deposit of $2,000 is deposited by us as a further good faith that we desire to go through with the above mentioned deal, providing present vendors or owners will accept a $30,000 land contract in addition to the $20,000 cash payment as per original agreement between vendors and I. Burstein.

    "It is also understood that in the event that this contract will not be accepted by the vendors, this deposit of $2,000 will be returned to Mr. Burstein. Mr. Burstein also to have the right to be through with deal as originally intended.   Deal to be closed on or before 30 days from date.

"ALLDIS & COMPANY,
"By JNO. HUDSON,                    "I. BURSTEIN.
"By A. E. SMITH."

On the back of the $2,000 check appears,

"Pay Dime Savings Bank, Detroit, Michigan, or order.

"ALLDIS & CO.
"Paid through Detroit Clearing House, July 26, 1920.
"DIME SAVINGS BANK."

Whether or not the owners consented to the proposal of July 22d does not plainly appear, but agreeable to negotiations with Alldis a new proposal was made by plaintiff.   He testified that the same check as delivered to Alldis was used and of the circumstances of its making said:

"When I was out there one night, new terms, to go in, for extension of time, Mr. Alldis went over to the stenographer and dictated this agreement, came back

from the stenographer to me and read over this statement. I says 'Now in case they do not accept, they don't give me additional time, what becomes of the $2,000?' He says, 'Well, we will give it back to you.' I said 'So that will not be misunderstood, will you be kind enough to put it on?' And Mr. Alldis wrote it out."

The body of the proposal is typewritten except the last sentence, which is written with pen and ink. It was written in duplicate, each keeping a copy, and is as follows:

. "August 13, 1920.

"To ALLDIS & COMPANY,
"Detroit, Michigan.

"*Gentlemen:* Herewith attached our checks for $2,000, as a further deposit on the purchase of property known as 31-37 Ledyard St., Detroit, Michigan: This deposit of $2,000 is deposited by us as a further good faith that we desire to go through with above sale, and to pay the balance of the total of first payment on or before October 1, 1920, or forfeit any rights or any interest we might have in above mentioned property.

"If the parties do not accept this agreement for additional time to close above property, $2,000 is to be returned to I. Burstein.

"Signed and delivered in                     "I. BURSTEIN.
    the presence of
        "JNO. HUDSON,
        "A. E. SMITH."

The next written evidence in sequence of events is as follows:

"To ALLDIS & CO.,                     August 14, 1920.
    "Detroit, Mich.

"In consideration of a further deposit of two hundred and fifty dollars ($250.00) to me in hand paid, receipt of which is hereby acknowledged, I hereby agree to extend the time of closing deal for the sale of my property known as No. 31 Ledyard Av., Detroit, Mich., up to and including October 1, 1920.

"JNO. HUDSON, .                     "MRS. ROSE VON DOLCKE.
"A. E. SMITH."

"To ALLDIS & CO.,                   August 14, 1920.
   "Detroit, Mich.
   "In consideration of a further deposit of Two
Hundred and Fifty Dollars ($250.00) to us in hand
paid, receipt of which is hereby acknowledged, we
hereby agree to extend the time of closing deal for
the sale of our property known as No. 37 Ledyard
Ave., Detroit, Michigan, up to and including October
1, 1920.
"JNO. HUDSON,                "WM. F. VOIGT,
"A. E. SMITH.               "Per CARRIE E. VOIGT,
                            "CARRIE VOIGT."

On that date Alldis & Co. gave the respective owners
checks for $250 which were paid through the Detroit
clearing house on August 17, 1920.

The next written evidence relating to this trans-
action consists of notices dated September 28, 1920,
signed by the owners individually and directed to plain-
tiff reminding him that his optional contract for pur-
chase of the described property would expire on
October 1, 1920, at 12 p. m., and giving notice that
"unless the deal is completed before that time the
money given by you for the option will be forfeited and
the option invalid." On the same date Alldis & Co.
wrote plaintiff a letter of like import stating the
owners had advised them no further extension of time
would be granted beyond October 1, 1920, and if the
sale was not consummated within that time his con-
tract would become void and deposits he had made
forfeited.

Whatever reply plaintiff made to those communica-
tions was oral and to defendant. He never paid or
tendered to either owners or agent the balance of the
$20,000 payment, time for which had been extended
to October 1, 1920. On April 7, 1921, he commenced
this action in assumpsit to recover from defendant the
$3,000 deposits he had made as shown. His declara-
tion contains the common counts and a special count

relating to the transaction involved, alleging that his offers and the agreement of July 22, 1920, which he submitted to defendant were never accepted by the owners, or if accepted the acceptance was never delivered or communicated to him; that they are therefore null and void under the provisions of section 11977, 3 Comp. Laws 1915, and the money deposits he made with defendant were without consideration.

Upon the trial plaintiff's counsel conceded that the "case must turn upon the proposition which was made August 13, 1920," and asked a directed verdict in plaintiff's behalf for the $2,000 deposited under it with interest, while defendant's counsel requested a verdict of no cause of action under the written evidence and plaintiff's conceded failure to pay or tender the amount required to maintain his rights under the terms of his conditional purchase.

The court held the proposed agreement of August 13, 1920, for extension of time was legally accepted in writing by the owners, but under the conflicting testimony submitted to the jury the question of whether defendant timely gave plaintiff proper notice that said offer had been accepted by the owners. The jury decided that issue of fact adverse to plaintiff's contention and rendered a verdict for defendant. A motion by plaintiff's counsel for judgment *non obstante* and for a new trial were denied, and judgment on verdict thereafter rendered.

Upon the issue of fact submitted to the jury we are not impressed that the verdict was against the great weight of the evidence, as contended. Plaintiff testified that on numerous occasions between August 13, 1920, and September 29, 1920, he inquired of defendant and his salesmen whether his offer of August 13, 1920, had been accepted by the owners, and that on each occasion to as late as September 25, 1920, he was informed by them that it had not been accepted

formally, but intimated that it would be.    This testimony was positively denied and the contrary asserted by the defense.    Defendant Alldis testified that he early informed plaintiff that the owners had accepted the proposed extension of time and repeatedly urged him to be ready for performance on or before the time limit, saying in part:

"Three or four days after (receiving the owners' acceptance) I told Mr. Burstein I had the papers and the proposition was accepted and extended to October 1st, and everything was O. K. they gave that option, that he could go ahead with his proposition, we were all waiting on him.    We told him that we had it accepted in writing  *   *   *  and when he was ready to go ahead and finish up his end of the transaction. He did not ask me to see these papers, just thanked me.    They were kept together in the file, together with his offer.    I had six or seven conversations with him to close the deal."

Defendant's salesman Hudson testified in part:

"I saw Mr. Burstein the third or fourth day after August 13, 1920, he then came into the office and wanted to know if we had our acceptance, and I told him we did, that is, acceptance on the extension.    I told him definitely the extension had been granted. We had the extension at the time I told him that.    I think they signed on the 14th.  *   *   *  Afterwards, I had a conversation with him; he spoke about his loan to put up the building.    All the conversation after that date regarding this deal was as to the date of closing—we had several with him, but it was all that way.    We were always asking him when he was going to close.    Mr. Burstein never came down to our office after that date to close the deal."

Plaintiff contended that defendant promised him the owners' acceptance in writing, which was denied, and it is not shown that any notice of acceptance by the owners, oral or written, was ever given him before September 28, 1920.

Though couched as a reminder and warning, the written notice of September 28th, direct from the owners to plaintiff, made plain he yet had until midnight of October 1, 1920, in which to perform on his part and close the deal.   But conceding that it came too late for a valid notice of acceptance, as he contended and the trial court seems to have recognized, on the issue of due and timely notice of acceptance as submitted to the jury defendant's contention was sustained.   Except their final notice to plaintiff, he had no direct communication with the owners.   His negotiations and dealings were entirely with and through defendant as their authorized agent.

When plaintiff found himself unable within the prescribed time to meet the conditions of his option contract and they had tentatively agreed upon terms for extension of time defendant obtained the owners' acceptance in writing the following day.   So authorized he promptly notified plaintiff he had secured it and that the time of payment was extended, as the jury found.   The writings between the parties construed together show that the original optional contract of April 13th was only changed by a further deposit made in consideration of further extension of time for payment.   It was competent for the so authorized agent to extend the time of payment by parol as his principals might have done.

In *Loveridge* v. *Shurtz*, 111 Mich. 618, this court held (quoting from syllabus) :

"It is competent for the parties to a contract for a conveyance of land requiring the deed to be executed on a specified day to extend the time by parol."

*Vide,* also, *Frazer* v. *Hovey*, 195 Mich. 160.

"It is very generally held that the time of the performance of a contract for the sale of land may be extended by parol.   Thus the parties may by parol

agreement extend the time of payment, or the time for executing the conveyance." 39 Cyc. p. 1351.

It is further urged that under the ruling in *Hollingshead* v. *Morris*, 172 Mich. 126 (41 L. R. A. [N. S.] 310), the written acceptances by the owners of August 14th addressed to their agent were not valid acceptances as to plaintiff. In that case there was an offer by the owner but no money paid or tendered nor acceptance of the offer delivered to him until he had sold the property to another. We think the case is distinguishable in material facts and not controlling here.

Plaintiff's counsel imputes a sinister motive to defendant's not turning over to the owners the entire deposit of $2,000 when they accepted the proposed extension of time to October 1st, which it is claimed constituted "a breach of trust on his part to the plaintiff." That impresses us as a matter between the owners and their agent, as plaintiff was given the extension of time he made the "further deposit" for.

The writings all relate to the same conditional purchase and are to be construed together. By them all payments were "to be made to the office of Alldis & Company until this agreement is fulfilled." The $2,000 deposit was of the same nature as the first except as to the extension of time for fulfilment in consideration for which it was made, and to be credited upon the provided payment of $20,000, if the balance was paid within the extended time limit. The $3,000 deposited, or slightly over 2% of the $140,000 purchase price, tied up this property from April 13th to October 1, 1920. Had the sale gone through, defendant's 3% commission from the owners would have been $4,200. When the optional contract expired and the $3,000 deposits were forfeited he had turned over to the owners $1,500 of it and yet had in his possession the other half. He was accountable to them for it and its disposition was a matter between him and

them.    Plaintiff was dealing at arm's length with the owners and their agent.    There were no trust relations between them, or their agent, and plaintiff.
    The judgment is affirmed.

BIRD, C. J., and SHARPE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.

Justice MOORE took no part in this decision.